United States District Court
Southern District of Texas
**ENTERED**
April 19, 2022
Nathan Ochsner, Clerk

| | | |
|---|---|---|
| United States District Court | | Southern District of Texas |

| | | |
|---|---|---|
| Zelia Brown, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| versus | § | Civil Action H-20-2186 |
| | § | |
| Houston Community College, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## Opinion on Class Certification

1. *Facts.*

   This is an employment discrimination case against Houston Community College. Zelia Brown, a former employee, sued for herself and on behalf of a class of similarly situated black employees. She says the College enacted a policy to displace black employees with white and hispanic employees.

   In 2015, the Chancellor approved a transformation plan to incorporate the College's satellite schools. Brown says this plan was a plot to give preferential treatment to hispanics. She says 90% of black executives and professionals have been fired or forced out from their jobs. This statistic is disputed.

   Brown sued the College for violating: (a) Section 1981 based on race and retaliation; (b) the Texas Labor Code; (c) the First Amendment; and (d) the Texas Whistleblower Act. The Court has dismissed the First Amendment claim.

   On July 27, 2020, the College moved to strike the class certification.

2. *Standing.*

   Standing requires that the plaintiffs show they have suffered an actual or threatened injury that is traceable to the defendant and is redressable by the court. The College says that Brown does not have standing. If Brown, as the representative of the class, does not have standing, neither does the class. It says that she did not suffer a civil rights injury.

Brown says that she was constructively discharged. She says she was excluded from meetings and placed on administrative leave. These events are aggravating factors that satisfy a constructive discharge claim at this moment.

The Court has said that she adequately pleaded a constructive discharge claim. Her claims are sufficient to establish standing.

3. *Class Action.*

Several conditions must be met before a class action is delineated. Federal Rule 23(d)(1)(D) requires that:

A. The plaintiffs are so numerous that joinder is impracticable;
B. Questions of fact and law that are common to all;
C. The claims of the representatives are typical to the class; and
D. The representatives will fairly and adequately protect the class interest.

A class action is the exception. It must promote efficiency in adjudicating a cluster of similar claims. Class certification must be superior to traditional methods. Reciting the requirements of a class action is insufficient to satisfy the conditions. It must be based on facts.[1] The claims must also be capable of class-wide resolution.

In Brown's amended complaint, she seeks a class of:

> (a) all black Americans who were or continue to be employed by the College from January 1, 2016, through the filing date of the original petition in this litigation and (b) who have had an adverse employment action imposed upon them by the College in violation of Section 1981.

The College says the proposed class does not meet the requirements of Rule 23. When the motion to strike the class was initially filed, Brown wanted more discovery for the class claim. Since then, the Court has ordered significant discovery to decide whether the class should be certified, including records of hispanic employees. Brown also deposed Janet May, the human resources director of the University. Based on this evidence, the Court rejects the class.

---

[1] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

A. *Numerosity.*

The proposed class must be numerous. No specific number is required. Brown says that the class could include over 100 Black Americans who were employed by the College from January 1, 2016, through 2018. It said that it wanted more discovery to fine-tune their estimate.

The College gave Brown four submissions of data. During discovery, the College filed a list from its PeopleSoft records that tracks employees race and reasons for leaving. (Docket 53). Employees select their own race. The data was limited to employees at salary level P-10. It reflects employees in management. Brown suggested this group as a means to narrow discovery. Brown was also an executive herself.

Brown says the data is incomplete. She says that the P-10 employees only reflect a small selection of black employees at the College. She says the data are also inaccurate because it classified a black employee as white. She argues that the action codes do not specify whether an employee voluntary or involuntary resigned. The College filed the resignation letters of the employees who resigned to cover the gaps.

This statistical data is persuasive. This data revealed that in a subset of the class, only four employees who were terminated had hispanic or white replacements. Brown has alleged that 90% of black employees were displaced. Brown does not specify the source of this number and has no data to support it.

The evidence suggests that the potential class would not be so numerous that trying each case would be impracticable. It falls short of numerosity.

B. *Commonality.*

Class members must have common questions of law or fact. The Supreme Court has said commonality demands class members have a "common contention" that is capable of class wide resolution. Common discrimination claims alone are insufficient.[2]

---

[2] *General Telephone v. Falcon*, 457 U.S. 147, 162 (1982).

The College says Brown's class certification is broad. It includes current and former employees and people employed in hundreds of different positions. It says a class certification was denied when commonality was based solely on race and adverse employment failed.[3] It also says that Brown does not have a common policy that ties the claims.

Brown insists that the common policy withstands heightened scrutiny required under Rule 23. Brown says four common questions arise from the College's alleged discrimination plan: (1) whether the College created a policy that targeted black employees; (2) whether the College engaged in a general policy, pattern, and practice of replacing black employees with hispanic or white employees; (3) whether the policy was "de facto" racial discrimination; and (4) whether the College is liable for damages to the class based on discriminatory conduct. It distinguishes the College's reliance on *Pinkard* because the employees in that case did not allege a common policy or custom.

Brown needs more than a list of disgruntled current and former employees of the same race to make a class. Based on the pleading, multiple dissimilarities exist within the class. For example, one class member alleges a false sexual harassment claim. Two of the employees were passed over for a promotion, two were demoted, one was assaulted, one was terminated for calling the police, one was investigated after making a sexual harassment allegation and one was removed from her position. These claims do not share commonality based on an overarching displacement plan.

It is unclear whether the employee's experiences were caused by the displacement plan. Brown has an email by the director of the College that suggests hispanics will have preferential treatment. Yet her class includes black employees displaced by races other than hispanics. Any employee fired on the basis of race would have a valid claim; however, the commonality element also fails when the grand displacement plan that gives hispanics preferential treatment does not actually replace a black employee with a hispanic.

---

[3] *Pinkard v. Pullman-Standard*, 678 F.2d 1211, 1215 (5th Cir. 1982).

The displacement plan is not enough to tie every individual claim. Indeed, many reasons may have contributed to a person's adverse employment decision such as poor performance. The College's employment decisions are too personalized to meet commonality among the class members. It fails.

C.  *Typicality and Adequacy.*

To decide whether Brown is an adequate representative the court considers: (1) the seal of representative's counsel; (2) the willingness and ability of the representative to control the litigation; and (3) the risks of conflicts of interest between the named plaintiffs and the class they seek to represent. [4]

The College says Brown is an inadequate class representative. It says Brown's retaliation claims are unique and personal to the detriment of the alleged class. It says Brown has dueling retaliation and discrimination claims. She says the College violated her First Amendment and the Texas Whistleblower Act. These claims depart from the alleged common contention of the class. It also says that the competing lawsuit in *Austin* shows that she has no control over the class.

Brown says identical claims are not required. She says her claims are typical because she suffered an employment action under the displacement plan for being black like many others of the class. She insists that the central thread of the displacement plan makes the potentially different claims brought by class members irrelevant. She argues that the *Austin* lawsuit bolsters her claims and remain aligned with this case.

Brown's unique circumstances make her an inadequate representative. She has a whistleblower claim while the others do not. She was also put on administrative leave for creating a hostile workplace. These conditions are different than the claims of the proposed class. Brown does not share the same employment issues as the other members of the class. It fails.

---

[4] *Slade v. Progressive Security Insurance Co.*, 856 F.3d 408, 412 (5th Cir. 2017).

4.  *Type of Class.*

The relief Brown requests must be capable of class-wide resolution. The class seeks an injunction and money damages. Under Rule 23(b)(2), if the class requests an injunction, then the College's actions must have been generally applicable to the class. Under Rule 23(b)(3), if a class requests money damages, the common questions of law and fact must predominate over the differences.

A.  *Injunction.*

Brown says that injunctive relief would be appropriate for the whole class. She seeks an injunction that would stop the College's racially discriminatory practice against black employees in hiring decisions. She insists that the College did not have to injure every class member the same way to be capable of relief sought in the injunction.

The College says that the Supreme Court in *Dukes* foreclosed class certification if each member would be entitled to individualized relief. It says that Brown's requested relief is equivalent to asking the College to obey the law.

The relief she seeks can only be decided on a case-by-case scenario. Some of the class members may not have suffered emotionally. She did. The personalized nature of the relief she seeks on behalf of the class demonstrates that Brown is an inadequate representative.

The injunction would not resolve all the class representatives grievances.

B.  *Money Damages*

Brown says the predominant issue is whether the College discriminatorily targeted Black employees and replaced them with Hispanic and white employees. She rejects the College's focus on *how* employees were harmed by the displacement plan. She insists that the predominant issue prevails over a claim-by-claim decision because each class member meets the elements of a claim under 1981.

The College says the relief she seeks is ill-defined and broad. It says the class includes current and former employees who were not terminated. It says the defenses for each class member would vary based on the unique circumstances of each worker.

The common questions do not predominate over the individual claims. The claims differ.

5. *Statute of Limitations.*

The College says that the class covers a four-year period outside of the two-year statute of limitations. It argues that Brown's claims must be found within two years because claims against a governmental entity through 1981 are subject to the personal injury statute of limitations of the forum state. It says that the class must be limited to black workers who were fired or resigned after June 19, 2018, the period of Brown's EEOC filing of the charge.

The Supreme Court has said a four-year statute of limitations claim applies to Section 1981 claims.[5] Because the College is the government, the limitations period of Texas applies.

The class period begins on January 1, 2016, through June 2020. The two-year limitations period would strike half the proposed class period.

6. *Conclusion.*

The College says that black employees have remained the largest group of its employees since 2016. It has charts and graphs that show minor changes in the distribution of black employees over a five-year period. It shows that the Chancellor's executive council of 14 members has six black workers.

It denies Brown's assertion that the transformation plan was disguised as a displacement plan that discriminated against black workers. On the contrary, black employees have filled vacancies at twice the rate of hispanics at pay scale 10 and above.

---

[5] *Jones v. Texas Juvenile Justice Department*, 698 F. App'x 215, 216 (5th Cir. 2017).

Brown insists the data are incomplete. Nevertheless, it is sufficient to deny the class certification because the members lack commonality.

The class certification is denied. (22)(94)

Signed on April __19__, 2022, at Houston, Texas.

Lynn N. Hughes
United States District Judge