## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **ZELIA BROWN,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:20-cv-02186** |
| | § | |
| **HOUSTON COMMUNITY COLLEGE** | § | |
| **SYSTEM,** | § | |
| | § | |
| *Defendant*. | § | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Houston Community College System ("HCC" or the "college") moves for summary judgment.

## Introduction

Zelia Brown, who is black, worked as a manager for HCC. In October 2019, several employees, including black employees, complained to Brown's supervisor that Brown treated them unprofessionally at work. An HR representative, who is black, interviewed the employees and they said Brown was condescending, divisive, and rude, among other things. Brown was placed on administrative leave with pay while HR continued to review the matter. While on paid leave, Brown sent a letter to the U.S. government questioning HCC's use of grant funds and asking for "protection under the whistleblower act." She does not know if anyone at HCC knew about her letter. HCC chose to return Brown to her job with warnings about how to appropriately treat people at work. On the day she was scheduled to return, Brown resigned.

1

Brown claims HCC discriminated against her because she is black and retaliated against her under Title VII even though she never previously complained about discrimination at HCC. She also claims HCC retaliated against her because of the letter she wrote to the U.S. government—the one she doesn't know if anyone at HCC ever knew about. All of Brown's claims should be dismissed because she quit her job, and her claim that she was "constructively discharged" is frivolous in light of the undisputed facts. Her race, retaliation and whistleblower claims fail for numerous additional reasons shown below. HCC should be awarded its attorney's fees.

## Facts

### A.    HCC and Brown.

HCC is a community college district organized under Chapter 130 of the Texas Education Code. Tex. Educ. Code § 130.182. The College is governed by a nine-member Board of Trustees and its highest-ranking employee is its Chancellor. *See* Tara Bond Declaration, Exh. A, at ¶ 2. The college's policies prohibit unlawful discrimination and retaliation against employees. Exh. A at ¶ 2; HCC Board Policy DIAB (Local), Exh. A-1.

HCC hired Brown in February 2016 as manager of grants performance and compliance. Dkt. 14, Amend. Compl. at p. 13, ¶ 32. Brown's primary role was to manage the college's processes for ensuring that grant funds were used effectively and in compliance with funding agency regulations. *See* Zelia Brown Depo., Exh. B, at 39-40; Job Description, Exh. B-1. Dr. Maya Durnovo was Brown's supervisor until January 2019, when Miguel San Juan became Brown's supervisor. Exh. B, at 82-83, 119. San Juan reported to Dr. Kurt Ewen, a vice chancellor. Exh. B at 143-144; Exh. B-5.

2

**B.     October 2019 – Several employees complain about Brown's condescending, unprofessional and inappropriate behavior.**

In October 2019, several employees told San Juan that Brown was treating them unprofessionally at work—that she was condescending, divisive, and rude, among other things. *See* Tara Bond Deposition, Exh. C, at 28-29. San Juan contacted HCC's human resources department and spoke with Tara Bond, a human resources senior partner. *Id*. Ms. Bond, who is black, conducted a preliminary review of the matter. *Id*. at 6, 10-12.

As part of her review, Bond interviewed several employees including: John Minor—who reported directly to Brown and held the position of coordinator, grants compliance; Carolyn Greene—a grants writer who worked in the grants department; and Lisa Smith— another grants writer who worked in the grants department. Exh. A at ¶ 4; Exh. B at 42, 97, 129; Exh. C at 27, 79-80, 83, 87. Minor, Greene and Smith submitted written statements to Bond. Exh. A at ¶ 4. Minor, who is black, stated as follows:

> Zelia Brown creates a bad environment for me and others to work with because she is argumentative, divisive and unprofessional. The behavior impedes the workflow. She manages the Department in a dictatorial fashion, wanting you to believe that you have a say in overseeing the Principal Investigator's (PI) grants that they manage, but in reality; she is pulling the string.
>
> ***
>
> She is condescending and encourages her employees not to talk to other coworkers. We need to work together even if she has issues with other coworkers.
>
> ***
>
> She uses the Race Card to get you to sympathize with her reasoning when management does not process a situation the way she wants it to go or when she wants the staff to agree with her.

3

*** 

I have been so stressed working here whereas I feel sick coming to work sometimes. My stomach is upset whereas I can't eat until I leave here.

*See* John Minor Statement, Exh. A-5.

Greene, who is also black, stated as follows:

Ms. Brown tried to give the impression of being a cooperative team player when she initially arrived at HCC. In a short period of time, however, her negative attitude and unprofessional behaviors made our workplace a hostile atmosphere. This situation has been occurring for an extensive period of time.

*** 

The specific hostile actions taken by Ms. Brown vary from situation to situation. They can range from simple things such as:
- directing her staff not to interact with their fellow Team members;
- exaggerating the details of an event to make herself look better;
- blatantly lying when confronted about her unprofessional behavior, etc.

The more intense choices made by Ms. Brown's behavior include:
- making derogatory remarks about HCC staffers (even those at the AVC level) in public forums;
- sowing discord between people by leveraging known racial and cultural prejudices;
- yelling at her subordinates so loud that people on half of the floor can hear it;
- assigning fault for problems encountered with executing a grant to the Grant Writers without even speaking with them to understand the background of the proposal development process;
- marketing her private business at an event where she was supposed to be representing HCC;

*See* Carolyn Greene Statement, Exh. A-6.

Smith, who is white, stated as follows:

There have been several issues and incidents with Zelia Brown, Compliance Manager for HCC. The main issue is the behavior exhibited by Ms. Brown and the condescending way she speaks to individuals that she does not care for. I am one of those people she has spoken to rudely and I have been witness to it in meeting(s) with other individuals.

***

> Being in a managerial role, I feel that Ms. Brown does not exhibit the type of behavior that is acceptable when dealing with co-workers. As I stated in our meeting, I do not come to work to make friends, I come to work to do a job and it is made difficult by Ms. Brown when she does not relay information or communicate with grant writers. . . . There should be a level of professionalism exhibited by Ms. Brown, which is lacking in her daily interactions.

*See* Lisa Smith Statement, Exh. A-7.

On October 30, 2019, Bond submitted a "preliminary assessment summary" memo to San Juan summarizing Brown's condescending, unprofessional, and inappropriate behavior toward employees as reported to Bond during her review. Exh. C at 72-73; Preliminary Memo, Exh. C-1.

## C.   November 2019 – Brown is placed on administrative leave with pay.

On November 8, 2019, HCC's Chief Human Resources Officer, Janet May, issued Brown a memo notifying her that she was being placed on administrative leave with pay "pending the conclusion of review into possible violations of HCC Local Policy and Regulation DH Employee Standards of Conduct." Exh. B at 100; Leave Memo, Exh. B-3; Board Policy DH (Local), Exh. A-2.

In January 2020, Bond and San Juan interviewed Brown at HCC's offices about the allegations made against her. Exh. B at 101-105. Brown denied the employees' allegations. *Id*. Brown admitted during her deposition that—other than attending this interview at HCC's offices in January 2020, she did not report to HCC's offices again after she was placed on administrative leave with pay on November 9, 2019. Exh. B at 106-107.

5

**D.    January 27, 2020 – Brown sends a letter to the U.S. Department of Commerce and U.S. Office of Inspector General.**

On January 27, 2020—more than two months after being placed on administrative leave with pay—Brown sent a letter to the U.S. Department of Commerce and U.S. Department of Inspector General ("OIG") stating that she believed Dr. Durnovo had used grant funds "unethically," that she (Brown) "questioned" several invoices related to the college's use of grant funds, and that there was "possible wrongdoing" and "possible violations" involving HCC's use of grant funds. Exh. B at 179-181; Brown Letter, Exh. B-10. Brown concluded her letter as follows, "I am respectfully requesting an investigation be conducted *to assess whether, and to what extent, funds have been misappropriated*, and protection under the whistleblower act." *Id*. (emphasis added).

Nowhere in Brown's letter did she claim that HCC or any of its employees violated any law, and the concluding sentence in her letter made clear she was asking the OIG to figure out "whether" grant funds had been misappropriated in the first place. Brown testified as follows: "Q: Were you conveying to OIG that you thought that the use of these funds – that actual crimes had been committed?  A: No." Exh. B at 190.

Brown admitted during her deposition that she did not know if anyone at HCC knew about her letter to OIG. Exh. B at 182-183. Otherwise, Brown testified that one person from OIG called and told her an investigation would take place, but she never spoke to anyone at OIG again and does not know if OIG conducted an investigation. *Id*. at 181-186.

6

**E.     February 2020 – Brown is removed from administrative leave and directed to return to work.**

On February 20, 2020, San Juan issued Brown a memo informing her that HR found she had conducted herself inappropriately in the workplace and warning her that "the College will not tolerate any further inappropriate and unprofessional behavior toward others while performing your job." Exh. B at 140-141; San Juan Memo, Exh. B-5. The memo concluded, "You are hereby removed from administrative leave and shall report back to work on February 24, 2020. At that time you will meet with me and Dr. Ewen to discuss office protocol and procedures on a going forward basis." *Id.*

On February 22, 2020, Bond notified Brown by email that her return-to-work date was being postponed due to a building closure and that she would be notified of the new date. Exh. B at 160-164; Bond Email, Exh. B-6 at p. 1. Brown testified during her deposition that the decision to postpone her return because of the building closure was reasonable and that she had no reason to doubt that the building was, in fact, closed. Exh. B at 162-164.

Bond later emailed Brown and informed her that her new return-to-work date was March 3, 2020. Exh. B at 164; Bond Email, Exh. B-6 at p. 2. However, on March 4, 2020, Brown emailed Bond with the subject line, "Out Sick," and stated, "Good Morning, I will be out of the office this week, please see the attached note." Exh. B at 166-167; Brown Email, Exh. B-6 at pp. 3-4. The attached note was from a podiatrist excusing Brown from work until March 9, 2020. *Id.* Bond responded, "Thanks for letting me know. We'll plan for Monday [March 9, 2020] as your date of return then." *Id.*

7

**F.     March 9, 2020 – Brown resigns.**

On March 9, 2020—the day Brown was scheduled to return to work—she resigned via email to Bond and San Juan, "This correspondence is my letter of resignation, effective 3/9/2020." Exh. B at 20, 167-168; Resignation Email, Exh. B-6 at pp. 5-6. Brown acknowledged the following during her deposition:

Q:     Okay. You – it is true, though, that no one from the college told you you were terminated, correct?

A:     Correct.

Q:     No one from the college told you you were being demoted, correct?

A:     Correct.

Q:     No one from the college told you you were being reassigned, correct?

A:     Correct.

Q:     No one from the college told you to leave the college's employment, correct?

A:     Correct.

Exh. B at 168. At the time of her resignation, Brown had been on paid administrative leave (*i.e.*, not in the work environment) for four months—from November 8, 2019 to March 9, 2020.

**G.     May 2020 – Brown files an EEOC charge.**

Brown filed an EEOC charge on May 5, 2020, and checked the boxes for race, color, sex, age, and retaliation. Exh. B at 137-138; EEOC Charge, Exh. B-4. Brown admitted during her deposition that *she did not include any facts in her charge* related to race, age, or gender discrimination. Exh. B at 137-138. Brown also admitted that she never

complained of race discrimination while she was employed by HCC. *Id*. at 136-137. The EEOC issued Brown a right-to-sue letter (upon request) on June 20, 2022. Exh. B at 137-138; Right-to-Sue Letter, Exh. B-4 at p. 3.

**H.   Brown's failed effort to comply with the administrative requirements of the Texas Whistleblower Act.**

The Texas Whistleblower Act requires an employee to "initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action before suing under this chapter." Tex. Gov't Code § 554.006(a). HCC's grievance procedure for doing so is set forth in Board Policy DGBA (Local). Exh. A at ¶ 3; DGBA (Local), Exh. A-3, at p. 1 ("WHISTLEBLOWER COMLPAINTS"). Brown herself had lodged a complaint pursuant to Board Policy DGBA (Local) in October 2018. Exh. C at 118-119; Exh. C-3.

Importantly, Brown admitted during her deposition that she *did not file a grievance* pursuant to DGBA (Local) to complain that she was being retaliated against for being a whistleblower. Exh. B at 173-174. In a futile effort to meet the statutory prerequisite Section 554.006(a), Brown addressed HCC's Board during the "hearing of citizens" portion of its June 3, 2020 meeting. Exh. B at 175-179; Exh. B-9. Brown was permitted to address the Board on June 3, 2020, pursuant to Board Policy BDB (Local), which allows any citizen to address the Board. Exh. A at ¶ 3; BDB (Local), Exh. A-4. This policy, on its face, does not "relate to suspension or termination of employment or adverse personnel action" as required by the Texas Whistleblower Act.

9

I.     **June / July 2020 – Brown files suit and amends her complaint.**

Brown filed suit in state court in June 2020 and HCC removed the case to federal court. Dkt. 1 (Notice of Removal). Brown filed an amended complaint on July 14, 2020, wherein she asked the court to certify a class of black employees who suffered an adverse employment action at any time from January 1, 2016 through June 2020. Dkt. 14 at pp. 22-25, ¶¶ 63-72 (Amended Complaint). Brown asserted the following claims:

- Race discrimination under 42 U.S.C. Section 1981 – under both disparate treatment and disparate impact theories of liability. Amend. Compl. at p. 26, ¶¶ 76-77.

- Retaliation under 42 U.S.C. Section 1981. Amend. Compl. at pp. 26-27, ¶ 78.

- Race discrimination under Title VII and Chapter 21 of the Texas Labor Code – under both disparate treatment and disparate impact theories of liability. Amend. Compl. at pp. 27-28, ¶¶ 82-83, p. 30, ¶ 91.

- Retaliation under Title VII and Chapter 21 of the Texas Labor Code. Amend. Compl. at p. 28, ¶ 84, p. 30, ¶ 92.

- Retaliation under the First Amendment. Amend. Compl. at p. 31, ¶ 97.

- Retaliation under the Texas Whistleblower Act. Amend. Compl. at p. 32, ¶¶ 99-100.

J.     **April 2022 – The court denies Brown's class request and dismisses her First Amendment claim.**

On April 22, 2022, the court denied Brown's request for class certification and dismissed her First Amendment retaliation claim. Dkt. 136 at 7 (Order Denying Dismissal); Dkt. 137 (Opinion on Class Certification). The court's order denying Brown's class request included the following findings:

> This statistical data is persuasive. This data revealed that in a subset of the class, only four employees who were terminated had Hispanic or white replacements.

**Brown has alleged that 90% of black employees were displaced. Brown does not specify the source of this number and has no data to support it.**

\*\*\*

**Brown needs more than a list of disgruntled current and former employees of the same race to make a class.**

Dkt. 137 at 3-4 (emphases added). Brown testified during her deposition that she did not know how the allegation in her lawsuit—that 90% of HCC's black employees were displaced—was derived, and that her only knowledge of black employees leaving the college was what she overheard during work meetings as to certain black employees leaving the college. Exh. B at 64-67. In short, Brown's class allegations were false when alleged, the court found them to be false, and Brown had no factual basis to make them from the outset. This is true of the rest of her lawsuit as shown above and below.

## <u>Argument and Authorities</u>

### A.   **All of Brown's Claims Should Be Dismissed Because She Was Not Constructively Discharged.**

From the outset, all of Brown's claims should be dismissed because she has not suffered an injury-in-fact, which is a necessary prerequisite to all of her claims. Pursuant to Article III, in order for a plaintiff to establish standing, she must "allege (1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct and that is (3) likely to be redressed by the requested relief." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 590 (1992) (citations omitted); *see Wendt v. 24 Hour Fitness USA, Inc.*, 821 F.3d 547, 550 (5th Cir. 2016).

11

Brown alleges in her lawsuit that that she was constructively discharged from HCC. Amend. Compl. at p. 19, ¶ 53. Remarkably, Brown makes this allegation even though she had not been in the workplace for four (4) months, and even though she resigned on the very day HCC was returning her to work from paid administrative leave. *Id*. Brown's constructive discharge theory is simply frivolous. A constructive discharge occurs when "the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 342 (5th Cir. 2005) (quoting *Jurgens v. EEOC*, 903 F.2d 386, 390 (5th Cir. 1990)). The Fifth Circuit has identified several types of events that may constitute relevant evidence that a reasonable employee would feel compelled to resign:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status].

*Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div.,* 512 F.3d 157, 167 (5th Cir. 2007) (quoting *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000) (alteration in original)).

As stated above, Brown acknowledged during her deposition that the college did not terminate her, reassign her, demote her, or take any other action remotely meeting the elements of constructive discharge. Exh. B at 168. During her deposition, Brown offered a confusing array of comments about her decision to resign:

- Brown testified that she had "mixed emotions" about returning to work and stated: "So I did give it some thought to go back, but thought about it and did not want to go through what I went through." Exh. B at 170.

- Brown testified, "I actually made the decision not to go back on March 9th when I woke up thinking that I would go back and I decided not to." Exh. B at 171.

- Brown testified that she was "not happy to go back to work" because a previous grievance she filed "went nowhere." Exh. B at 164. The "previous grievance" Brown filed *was more than a year before*—in October 2018—where she complained about her supervisor, Dr. Durnovo. Exh. B at 120-121; Exh. C at 118-120; Exhs. C-2, C-3.

Brown's evidence does not come close to establishing the intolerable working conditions the Fifth Circuit has recognized as the type that may support a finding of constructive discharge. The fact that Brown "woke up thinking that [she] would go back and [she] decided not to" is reflective of a conscious decision—not a *forced* outcome due to intolerable working conditions. Exh. B at 171. Importantly, HCC allowed Brown to *return* to her same job without any adverse effects, which also directly contradicts the notion that she was facing intolerable working conditions. Finally, Brown has no explanation for the fact that her "working conditions" during the four months preceding her resignation consisted of being on paid administrative leave. In sum, Brown was not constructively discharged as a matter of law and therefore lacks standing to bring any of her claims in this matter. *Perret v. Nationwide Mut. Ins. Co.*, 770 F.3d 336, 338-39 (5th

Cir. 2014) (holding that employee's subjective belief of impending termination insufficient to establish constructive discharge as a matter of law and finding no constructive discharge—particularly where the employee was on leave for two months prior to resigning); *Gossom v. J.O.S., Inc.*, 1998 U.S. Dist. LEXIS 9661 *7 (N.D. Tex. June 19, 1998) ("Subjective belief or speculation that one is going to be fired can't turn a resignation into a constructive discharge.").

**B.    Brown Cannot Establish Essential Elements of Her Section 1981 Claims.**

1.    Brown cannot establish municipal liability.

HCC is entitled to summary judgment on Brown's race discrimination and retaliation claims under Section 1981 because she cannot prove the elements of municipal liability under Section 1983. *See Crawford v. City of Houston*, 260 F. App'x 650, 652 (5th Cir. 2007). To establish municipal liability, a plaintiff must plead and prove that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009)). An official policy is "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "Under Texas law, a Junior College District like HCC is governed by a Board of Trustees." *Jones v. Houston Cmty. Coll. Dist.*, 2012 U.S. Dist. LEXIS 108288, at *24 (S.D. Tex. 2012) (citing Tex. Educ. Code § 130.082(b)).  The plaintiff must identify the policy that was the alleged moving force behind the adverse employment action. *See*

*Spiller v. City of Tex. City Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997).

Importantly, a governmental entity cannot be held liable under Section 1981 for an employee's alleged misconduct based on *respondeat superior* or vicarious liability theories. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A plaintiff must identify a policymaker with *final* policymaking authority *and* the policy or custom that is the "moving force" behind the alleged constitutional violation. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (*citing Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)); *see also Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993) (concluding that jury charge committed "manifest error" by assuming that principal and superintendent had policy-making authority or that *respondeat superior* liability applied). Simply because an employee acts as a decisionmaker does not mean that the employee is a policymaker for the governmental entity. *See Eugene*, 65 F.3d at 1305; *Jett*, 7 F.3d at 1246.

It is undisputed that HCC's policies prohibit unlawful discrimination and retaliation in the workplace. Exh. A-1. Indeed, Brown does not allege HCC maintains an unlawful policy giving rise to her Section 1981 claims. Instead, claims under Section 1981 are premised on being placed on paid administrative leave while the college investigated allegations that she created a hostile work environment, which she claims ultimately led to her supposed constructive discharge. Brown repeatedly blames "the Administration" as having supposedly conjured the hostile work environment complaint against her as a ruse to place her on paid administrative leave, but only specifically

alleges that Bond informed her that she was to remain on paid administrative leave. Amend. Compl., at p. 18, ¶ 50.

The facts above show that HCC's exclusive policymaker, its Board of Trustees, had no involvement whatsoever in Brown's employment, much less any conduct giving rise to the allegations in her lawsuit. Brown admitted as much in her deposition:

Q.    Ms. Brown, do you have any information or evidence you can share with me that HCC's board of trustees took any action at all with respect to your employment?

A.    I do not.

Q.    Do you have any evidence or information that HCC's board of trustees knew about your complaints against Maya Durnovo?

A.    I do not.

Q.    Do you have any evidence or information you can share with me that HCC's board of trustees knew that you had complained outside of the organization about the misuse of grand funds?

A.    I do not.

***

Q:    Do you know if any member of HCC's board of trustees ever learned of your complaint to OIG?

A:    No, I don't.

Exh. B at 160, 183.

Brown's attempt to hold HCC vicariously liable for the fictionalized and threadbare conspiratorial actions of "the Administration" and Bond's communication with Brown *while she was already on paid administrative leave* is clearly based on *respondeat superior* and is plainly forbidden. *See Piotrowski*, 237 F.3d at 578 ("*Monell*

16

and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such a reading.") (citing *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997)).  Merely pleading that "the Administration" committed bad acts is wholly insufficient to cloak any of the individual defendants with final policymaking authority for HCC, which belongs exclusively to the HCC Board of Trustees as a body corporate. *See Gelin v. Hous. Auth. of New Orleans*, 456 F.3d 525, 528 (5th Cir. 2006) (citing *Eugene*, 65 F.3d 1305); *see also Jones*, 2012 U.S. Dist. LEXIS 108288 at *24 ("The Board has the power 'to appoint or employ such agents, employees, and officials as deemed necessary or advisable to carry out any power, duty, or function;' 'shall act and proceed by and through resolutions or orders adopted or passed by the board;' and 'shall adopt such rules, regulations, and bylaws as it deems available.'") (quoting Tex. Educ. Code § 130.082(d)). Given Brown's complete failure to identify any action of the college's sole policymaker (HCC's Board of Trustees acting as a body corporate), her Section 1981 race discrimination and retaliation claims should be dismissed.

> 2.     <u>Section 1981 does not permit disparate impact claims.</u>

Brown alleges a race discrimination claim under Section 1981 under both disparate treatment and disparate impact theories of liability. *See* Amend. Compl. at p. 26, ¶ 77. Disparate impact is not a viable theory under Section 1981 as a matter of law.  *See National Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 714-15 (5th Cir. 1994); *Collins-Pearcy v. Mediterranean Shipping Co.*, 698 F.Supp.2d 730, 741 (S.D. Tex. 2010) ("A disparate impact claim is not legally viable under § 1981. Section 1981

17

requires proof of intentional discrimination."). Brown's Section 1981 race discrimination claim based on disparate impact must therefore be dismissed.

     3.    <u>Brown cannot prove that she was deprived of any right secured by Section 1981</u>.

Not only does Brown fail to sufficiently plead the existence of a policymaker or a policy of HCC, she has not pled (and cannot establish) that any policy or practice was the "moving force" behind a violation of Section 1981. Brown's burden in this regard is to plead facts showing that: (1) she is a member of a racial minority; (2) HCC intended to discriminate against her on the basis of race; and (3) the discrimination concerned one or more activities enumerated in the statute, such as making a contract. *Body By Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (citing *Bellows v Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997)). Brown is required to plead anad prove facts supporting an inference that the college's interference with her right or benefit was racially motivated, and (as here) where there is no direct evidence of discrimination pled, then the claim is analyzed using the familiar *McDonnell Douglas* burden-shifting framework. *See id.*; *see also Jenkins v. La. Workforce Comm'n*, 713 F. App'x 242, 244 (5th Cir. 2017).

A *prima facie* case of race discrimination under Section 1981 consists of the following elements: (1) the plaintiff is a member of a protected class, (2) she was qualified for the position at issue, (3) she was the subject of an adverse employment action, and (4) she was treated less favorably because of her membership in that protected class than were other similarly situated employees, who were not members of the protected class, under

nearly identical circumstances. *Wesley v. Gen. Drivers, Warehousemen and Helpers Local 745*, 660 F.3d 211, 213 (5th Cir. 2011) (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009))

Regarding Brown's race discrimination claim, because Brown resigned while on paid administrative leave, her only avenue to viably show that she suffered an adverse employment action is by demonstrating that she was constructively discharged. For the reasons set forth above, *supra* Section A, Brown cannot prove constructive discharge as a matter of law.

Assuming *arguendo* that Brown could establish she was constructively discharged, she additionally fails to identify any instances in which the college treated similarly situated, non-African-American employees, suspected of creating a hostile work environment, more favorably than her. Brown's inability to prove that similarly situated employees outside her protected class were not only treated more favorably, but also that they were treated more favorably in "nearly identical" circumstances, results in her Section 1981 claim being ripe for dismissal for failure to state a claim. *See Body by Cook, Inc.*, 869 F.3d at 386; *see also Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514-15 (5th Cir. 2001).

Brown's Section 1981 retaliation claim fares no better than her discrimination claim. A *prima facie* case of retaliation under Section 1981 requires Brown to establish: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *See Body by Cook, Inc.*, 869 F.3d at 390. To constitute a protected

activity under Section 1981, Brown must have: (1) opposed any practice made an unlawful employment practice by 1981; or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Section 1981. *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372 (5th Cir. 1998).

Brown admitted during her deposition that she never engaged in any protected activity while employed by HCC. Exh. B at 136-137. Since did not engage in a protected activity under Section 1981 prior to her resignation, she necessarily cannot establish a causal connection exists between any alleged protected activity and her alleged constructive discharge. *See Coleman v. Bank of Am., N.A.*, 2017 U.S. Dist. LEXIS 123090, at *17-18 (N.D. Tex. 2017).

**C.    Brown's Discrimination and Retaliation Claims under Title VII and Chapter 21 are Fatally Flawed.**

1.    <u>Brown failed to exhaust her administrative remedies before filing suit</u>.

Before filing suit under Title VII or Chapter 21, a complainant must file a charge of discrimination with the EEOC or Texas Workforce Commission to exhaust administrative remedies. *Melgar v. T.B. Butler Publ'g Co.*, 931 F.3d 375, 378-79 (5th Cir. 2019); *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 515 (Tex. 2012). "The Fifth Circuit has stated that 'the crucial element of a charge of discrimination is the factual statement contained therein.'" *Ollie v. Plano Indep. Sch. Dist.*, 565 F. Supp. 2d 740, 743 (S.D. Tex. 2007) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir. 1970)). A plaintiff is not required to "check a certain box or recite a specific incantation to exhaust his or her administrative remedies." *Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006).

"Instead, the plaintiff's administrative charge will be read somewhat broadly, in a fact-specific inquiry into what EEOC investigations it can reasonably be expected to trigger." *Id.* "Failure to exhaust is grounds for dismissal" under Title VII and Chapter 21. *Williams v. Tarrant Cnty. Coll. Dist.*, 717 F. App'x 440, 445 (5th Cir. 2018) (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996)). And for purposes of claims under Chapter 21, against governmental entities like HCC, that dismissal is for lack of subject-matter jurisdiction due to governmental immunity. *Chatha*, 381 S.W.3d at 515-16 (exhaustion of administrative remedies under Chapter 21, such as the timely filing of a charge of discrimination, is a mandatory, jurisdictional prerequisite to suit in cases against governmental entities) (citing Tex. Gov't Code § 311.034).

Brown admitted during her deposition that *she did not include any facts in her charge* related to race discrimination. Exh. B at 137-138. Moreover, Brown did not complain in her charge about being placed on administrative leave, being left out of meetings, being forced to endure conditions that caused her to resign, and further, did not raise any allegations whatsoever to exhaust a disparate impact theory of recovery. Exh. B-4. Instead, Brown merely touted her experience as a grants manager and described reporting the supposed "misappropriation and mishandling of government issued grant funds . . . ." *Id.* Brown's failure to allege *any facts* in her charge supporting her claim that she suffered an adverse employment action because of her race, or that she was retaliated against for complaining of discrimination, or that she was the victim of disparate impact discrimination, is fatal to her Title VII and Chapter 21 claims and they should be dismissed due to her failure to exhaust her administrative remedies. *See McClain v. Lufkin Indus.,*

*Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) ("Courts should not condone lawsuits that exceed the scope of EEOC exhaustion . . .") (omission in original); *see also Chatha*, 381 S.W.3d at 515-16.

      2.    <u>Brown cannot establish essential elements of her claims</u>.

Brown's race discrimination and retaliation claims under Title VII and Chapter 21 also fail on the merits for the same reasons set forth above. As to her race discrimination claims under Title VII and Chapter 21, Brown cannot prove a *prima facie* claim of discrimination because she did not suffer an adverse employment action. *See Drechsel v. Liberty Mut. Ins. Co.,* 695 F. App'x 793, 797-98 (5th Cir. 2017); *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 805 (Tex. 2010).

Additionally, as to her retaliation claims under Title VII and Chapter 21, Brown admitted that she did not engage in any protected activity under Title VII or Chapter 21 while she was employed by the college. Exh. B at 136-137. Because Brown cannot prove essential elements of her discrimination and retaliation claims, her Title VII and Chapter 21 claims should be dismissed. *Id.*; *see also Alamo Heights Indep. Sch. Dist. v. Clark,* 544 S.W.3d 755, 789 (Tex. 2018).

Even if Brown could establish *prima facie* claims of race discrimination and/or retaliation, all actions HCC took with respect to her employment were based on legitimate, non-discriminatory and non-retaliatory reasons. As an initial matter, being placed on administrative leave with pay is not an adverse employment action capable of supporting Brown's discrimination or retaliation claims, and there are no other actions of which Brown claims that constitute adverse employment actions to support her discrimination

22

or retaliation claims. However, even if being placed on administrative leave with pay was an adverse employment action, HCC placed Brown on paid administrative leave because several employees complained that she was rude, divisive and unprofessional in the workplace, which is a legitimate, non-discriminatory and non-retaliatory reason. Otherwise, the only decision made with respect to Brown's employment was the decision to *bring her back from paid administrative leave and return her to work*. It is axiomatic that the decision to return Brown to work is not an adverse employment action under any circumstances.

Finally, Brown cannot prove pretext. Even considering the decision to place Brown on administrative leave with pay, she has no evidence to show that HCC's reason for doing so (employee complaints about her behavior) is false. This is particularly true with respect to Brown's race discrimination claim given that some of the employees who complained about her conduct are also black.

**D.    Brown's Claim Under the Texas Whistleblower Act Fail for Several Reasons.**

Brown claims HCC retaliated against her in violation of the Texas Whistleblower Act ("TWA") because she was allegedly constructively discharged due to her letter to OIG. Amend. Compl. at p 32, ¶ 100. Brown's claim is fatally flawed in numerous respects as set forth below.

1.    Brown did not suffer an adverse employment action.

In order to allege a violation of the TWA, a plaintiff must plead and prove that an adverse employment action was taken against her because she made a report in good faith of a violation of law by her employer or another public employee to an appropriate law

enforcement authority.  Tex. Gov't Code § 554.002(a); *City of S. Houston v. Rodriguez*, 425 S.W.3d 629, 631 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). As argued above, Brown cannot establish constructive discharge as a matter of law, and her TWA claim should be independently dismissed for this reason.

> 2.   <u>Brown failed to initiate HCC's grievance procedures relating to the separation of her employment.</u>

If a public employee is discharged (including constructive discharge), the TWA requires the employee to "initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to . . . termination of employment" before filing suit. *Id.* at § 554.006(a). The TWA contains an administrative initiation requirement that states as follows:

> (a)  A public employee must initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action before suing under this chapter.
>
> (b)  The employee must invoke the applicable grievance or appeal procedures not later than the 90th day after the date on which the alleged violation of this chapter:
>
> > (1) occurred; or (2) was discovered by the employee through reasonable diligence.

Tex. Gov't Code § 554.006; *see Berry v. Bd. of Regents of TSU*, 116 S.W.3d 323, 325 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

In *Ninan v. Houston Community College System*, 2015 Tex. App. LEXIS 8721 (Tex. App.—Houston [14th Dist.] August 20, 2015, no pet.), the Houston Court of Appeals affirmed the dismissal of a former HCC employee's whistleblower claim because the

24

employee failed to file a complaint pursuant to HCC's employee grievance procedures. Here, Brown admitted during her deposition that she did not file a grievance pursuant to Board Policy DGBA (Local), which specifically addresses whistleblower complaints, to complain she was discharged in retaliation for being a whistleblower. Exh. B at 173-174. In a futile effort to meet the statutory prerequisite under Section 554.006(a), Brown addressed HCC's Board during the "hearing of citizens" portion of its June 3, 2020 meeting. Exh. A-4; Exh. B at 175-179; Exh. B-9. However, the TWA does not permit a plaintiff to simply initiate *any* process—it specifically requires a plaintiff to initiate the employer's grievance process "relating to suspension or termination of employment or adverse personnel action[.]" In HCC, that process is DGBA (Local). Brown's presentation to HCC's Board pursuant to its citizen comment policy is insufficient at a matter of law to satisfy her obligation to initiate HCC's grievance process related to her separation from the College. *See Miale v. Nueces Cty. Juvenile Dept.*, 2002 Tex. App. LEXIS 3151 at *7-8 (affirming dismissal of TWA claim for lack of jurisdiction where the plaintiff failed to invoke her employer's employee grievance policy and thus failed to comply with the Act's administrative review process).

> 3.    Brown did not report a violation of law.

The Act defines a "law" as: (1) a state or federal statute; (2) an ordinance of a local governmental entity; or (3) a rule adopted under a statute or ordinance. Tex. Gov't Code § 554.001(1). Although an employee does not need to identify a specific law when making a report, the employee must identify some law prohibiting the complained of conduct to give rise to a whistleblower claim.  *See Llanes v. Corpus Christi Indep. Sch. Dist.*, 64 S.W.3d 638, 642-43 (Tex. App.—Corpus Christi 2001, pet. denied). "Otherwise, every complaint,

grievance and misbehavior could support a claim under the Act." *Id*. Whether an employee reported a "violation of law" is a question of law to be determined by the court. *See Rogers v. City of Fort Worth*, 89 S.W.3d 265 (Tex. App.—Fort Worth 2002, no pet.).

A review of Brown's letter to the U.S. Department of Commerce shows that Brown did not report any violation of any law to that agency. Brown states that Dr. Durnovo used grant monies "unethically," that she "questioned" whether grant monies were used appropriately, and that she did not know where certain monies "went." Exh. B10. Nowhere in Brown's letter does she allege that HCC or any of its employees took some action that violated any law. Indeed, Brown admits that she was not accusing anyone of committing a crime. Exh. B at 190. In closing, Brown asked the OIG to conduct its own investigation to figure out "whether," if at all, grant monies were "misappropriated." Brown's failure to report a violation of law the OIG is independently fatal to her claim.

    4.   <u>Brown cannot prove but-for causation.</u>

        *a.  <u>Brown is judicially foreclosed from pleading but-for causation.</u>*

Brown must prove but-for causation in order to establish her retaliation claim under the TWA. "[T]he employee's protected conduct must be such that, without it, the employer's prohibited conduct would not have occurred when it did." *Tex. Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 636 (Tex. 1995); *see also City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 67 (Tex. 2000) (employee's burden to show adverse employment action was taken "because" of good faith report).

As an initial matter, Brown is judicially foreclosed from establishing but-for causation because she simultaneously claims that HCC terminated her employment because of her race.

*See Univ. of Texas at Austin v. Kearney*, 2016 Tex. App. LEXIS at \*11-12 (Tex. App.—Austin 2016, pet. denied) (citing Tex. Lab. Code § 21.055; *Anderson v. Houston Cmty. Coll. Sys.*, 458 S.W.3d 633, 647 (Tex. App.—Houston [1st Dist.] 2015, no pet.)). Having affirmatively plead that HCC terminated her because of her race, Brown cannot also show the requisite but-for causal connection between her alleged whistleblowing reports and her constructive discharge as a matter of law.

### b.   *Brown does not know if anyone at HCC knew about her report.*

Brown's TWA claim must also be dismissed because she admitted during her deposition that she does not know if anyone at HCC ever learned of her report. Exh. B at 182-183. It is well-settled that a plaintiff cannot establish causation under the TWA without pleading and proving that the alleged retaliators knew about the plaintiff's whistleblowing report. *See City of Fort Worth v. Zimlich,* 29 S.W.3d 62, 70 (Tex. 2000); *Harris County v. Vernagallo*, 181 S.W.3d 17, 25 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

### 5.    HCC's affirmative defense.

Even, if Brown could establish all of the elements of her TWA claim, the court should still dismiss the claim because HCC would have taken the same actions regardless of her letter to the OIE. "It is an affirmative defense to a suit under this chapter that the employing state or local governmental entity would have taken the action against the employee that forms the basis of the suit based solely on information, observation, or evidence that is not related to the fact that the employee made a report protected under this chapter of a violation of law." Tex. Gov't Code § 554.004(b).

After Brown sent her letter to the OIG, the only action HCC took with respect to her employment was to *bring her back from paid administrative leave and return her to work*. As argued above, this is not an adverse employment action in the first place, but also, HCC would have taken the same action (returning Brown to work) without regard to whether she sent her letter to the OIG. Brown cannot overcome HCC's affirmative defense, and her TWA claim should accordingly be dismissed. *See Steele v. City of Southlake*, 370 S.W.3d 105, 125-26 (Tex. App.—Ft. Worth 2012, no pet.) (affirming summary judgment on TWA claim based on statutory affirmative defense); *Vela v. City of Houston*, 186 S.W.3d 49, 54-55 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (same).

## E.    HCC Maintains its Governmental Immunity from Brown's State Law Claims.

Brown cannot prove essential elements of her claims against HCC under Chapter 21 of the Texas Labor Code and the TWA. Accordingly, HCC maintains its governmental immunity from these claims and the court should dismiss them for lack of subject matter jurisdiction. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 783-84 (Tex. 2018); *State of Tex. v. Lueck*, 290 S.W.3d 876, 881-82 (Tex. 2009).

### <u>Prayer</u>

HCC requests that the court grant its motion for summary judgment, dismiss Brown's claims with prejudice, and award HCC its attorneys' fees.

Respectfully submitted,

SPALDING NICHOLS LAMP LANGLOIS

/s/  Paul A. Lamp
PAUL A. LAMP
State Bar No. 24002443
Federal I.D. 21711
plamp@snll-law.com
MELISSA GOINS
State Bar No. 24074671
Federal I.D. 2089537
mgoins@snll-law.com
3700 Buffalo Speedway, Suite 560
Houston, Texas 77098
Telephone: 713-993-7060
Facsimile: 888-726-8374

ATTORNEYS FOR DEFENDANT HCC

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Benjamin L. Hall, III
William L. Van Fleet, II
The Hall Law Group, PLLC
530 Lovett Blvd.
Houston, Texas 77006
(*via* CM/ECF)

George J. Hittner
The Hittner Group, PLLC
P.O. Box 541189
Houston, Texas 77254
(*via* CM/ECF)

Thomas R. Phillips
Travis L. Gray
Katherine A. Brooker
Baker Botts, LLP
98 San Jacinto Blvd.
Austin, Texas 78701
*(via* CM/ECF)

Joseph Y. Ahmad
Jordan Warshauer
Edward B. Goolsby
Nathan B. Campbell
Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing, P.C.
1221 McKinney Street, Suite 2500
Houston, Texas 77010
*(via* CM/ECF)

Adrian V. Villacorta
The Villacorta Law Firm, PC
530 Lovett Blvd.
Houston, Texas 77057
*(via* CM/ECF)

James Ardoin
Jimmy Ardoin & Associates, PLLC
4900 Fournace Place, Suite 550
Houston, Texas 77401
*(via* CM/ECF)

/s/ Paul A. Lamp
Attorney for Defendant HCC